**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO._____

IN RE APPLICATION OF USA PURSUANT
TO 18 U.S.C. § 3512 FOR ORDER FOR
COMMISSIONER'S APPOINTMENT FOR
REQUEST FOR LEGAL ASSSITANCE
FROM THE GOVERNMENT OF BELGIUM

U.S. DOJ CRIMINAL NO. 182-86702

_____/

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully

submits this ex parte application for an Order, pursuant to 18 U.S.C. § 3512, appointing the

undersigned attorney, Michele Vigilance, Assistant U.S. Attorney, United States Attorney's

Office, as a commissioner to collect evidence and to take such other action as is necessary to

execute this and any subsequent, supplemental requests for assistance with the above-captioned

criminal matter from Belgium. In support of this application, the United States asserts:

RELEVANT FACTS

1.      The Central Authority of Belgium, the Federal Public Service Justice, submitted a

request for assistance (the Request) to the United States, pursuant to the Instrument as

contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United

States of America and the European Union signed 25 June 2003, as to the application of the Treaty

Between the United States of American and the Kingdom of Belgium on Mutual Legal Assistance

in Criminal Matters signed 28 January 1988, U.S.-Belg., Dec. 16, 2004, S. TREATY DOC. NO. 109-13 (2006) ("the Treaty").

2.     As stated in the Request, the Antwerp Public Prosecutor's Office, is investigating Dutch nationals Jermain Dwight Hornberger ("Hornberger"), Brenda Danielle Krolis ("Krolis") and Rachid Kassroui ("Kassroui"), Hendrik Albert De Boers ("De Boers") and Constantijn Johannes Mahieu ("Mahieu"), as well as companies Wise Man Estate N.V., Jalex N.V., S.L. Rama International and International Bemiddlelingsbureau, for the handling and transferring (purchase and sale) of a Belgian residential property, obtained allegedly by illicit means—in violation of Article 505 of the Belgium Criminal Code (Laundering). Under the Treaty, the United States is obligated to assist in response to the Request. A copy of the applicable law is included as Attachment A to this application

3.     According to Belgian authorities, Hornberger is a known drug trafficker and was previously sentenced in 2012 to a five year prison term in Belgium for narcotics manufacturing. In 2022, he was sentenced in the Netherlands to an additional 18 months in prison for laundering the proceeds of drug trafficking via purchase of two properties, which were confiscated by Dutch authorities. Belgian authorities also ordered the confiscation of an additional 278,850 euros (approximately 305,000 USD) in drug proceeds from Hornberger's prior drug trafficking activities but were unable to locate the funds.

4.     Belgian authorities recently discovered that from August 2015 to July 2019, Hornberger and his girlfriend, Krolis were both registered as living at the following property: Tortheidedreef 11 in 2970 Schilde, Belgium ("the Schilde property"). According to Belgian authorities, the property was leased in 2015 by the property owner at the time, David Costermans-

2

Koch ("Costermans"), to a Surinamese company, Jalex N.V., and Jalex N.V. represented Hornberger in the transaction. Through their investigation, Belgian authorities also learned that Hornberger and his girlfriend had previously rented luxury vehicles through Jalex N.V. and that Hornberger had used the company to conduct other business transactions in Belgium. Belgian authorities also reported that Jalex N.V. was under separate investigation for allegedly colluding with a Belgian vehicle rental company to conceal as legitimate rentals, vehicles that were actually criminal assets.

5.      According to Belgian authorities, Hornberger participated directly in the 2015 lease negotiations of the Schilde property, and notary records obtained by them show that Hornberger retained the right of first refusal via Jalex N.V. on any subsequent purchase of the property up until 2018. In addition, bank records show that on March 4, 2015, 83,000 euros (approximately 90,000 USD) were transferred from a Sabadell United Bank, N.A. U.S. bank account (No. xxxxxxx356), in the name of a U.S. company, S.L. Rama International (customer's name listed on the back account), to the Belgian bank account of Costermans—with the beneficiary address listed as the Schilde property and the instruction, "Deposit O/B/O Jalex." The transfer was authorized by Lakshmi Sujan, on behalf of Sabadell United Bank. Two subsequent payment transfers of 83,000 euros (approximately 90,000 USD) each were made to Costermans, on March 17 and March 26, 2015, respectively. Both were sent from the same U.S. bank account (xxxxxxx356), in the name of S.L. Rama International and on behalf of Jalex, with the Schilde property listed as the beneficiary address. The March 17 payment was authorized on behalf of Sabadell United Bank by Martha Menendez and Adriana Hermida and the March 26 payment by Tikam Sujan.

6.      According to Belgian authorities, the Schilde property was purchased in November

3

2018 from Costermans by another Surinamese company, Wise Man Estate N.V. In a statement to Belgian authorities, Costermans reported that Hornberger purchased the property through Wise Man Estate N.V. According to Belgian authorities, Hornberger transferred his right of first refusal from Jalex N.V. to Wise Man Estate N.V. Also, in October 2016, a sum of 249,850 euros (approximately 273,000 USD) was transferred from the same Sabadell United Bank account (xxxxxxx356), again in the name of S.L. Rama International, to a Belgian bank account in the name of Paul Rommens ("Rommens"), a Belgian national, who later signed as the notary public on the 2018 deed purchase of the Schilde property by Wise Man Estate N.V.

7.     In an email obtained by Belgian authorities, which was sent from Hornberger to Rommens and dated May 16, 2018, Hornberger apologized for the delay in additional payment, explaining that the money could no longer be transferred from the U.S. According to Belgian authorities, on May 28, 2018, an additional transfer was made to Rommens's same Belgian account, in the sum of 200,000 euros (approximately 219,000 USD) but was sent from a DSB Bank account (Surimanese bank), in the name of a Surinamese company, International Bemiddlelingsbureau, and referenced "fee personal property, INV 24982." On May 30, 2018, a subsequent transfer was made from the same DSB Bank account, in the name of International Bemiddlelingsbureau, to Rommens' same account, for 272,500 euros (approximately 298,000 USD), and again referenced "fee personal property, INV 24982."

8.     According to Belgian authorities, five additional transfers of funds were made to Rommens to cover the 2018 purchase of the Schilde property by Horneberger. Records for all five bank transfers all referenced financing of the Schilde property. Three of these transfers were made to Rommens' same Belgian account number, from Dutch bank accounts, in the name of a Dutch

4

company, Ha De Boers Holding B.V. Two were made from Dutch bank accounts, in the name of C.J. Mahieu. Mahieu was asked by Mohamed Nassrullah, who identified himself as the attorney for Hornberger and also Wise Man Estate N.V., to co-finance the purchase of the Schilde property. Mahieu and another associate, Hendrik Albert De Boers, entered into an agreement to loan Wise Man Estate N.V. 278,506 euros (approximately 305,000 USD) at a 10% interest rate over 6 months. According to Belgian authorities, the official interest rate for bank mortgages at the time was approximately 1.8%. Hornberger would likely not have been able to obtain a mortgage loan through regular banking channels because of his criminal history and his inability to explain the source of the funds, leading him to seek out and enter into an agreement with a separate financier at an exorbitant interest rate.

9.      According to Belgian authorities, Hornberger had an ownership interest in Wise Man Estate N.V. at the time of the 2018 property purchase. Wise Man Estate N.V. was a bearer share company. In the case of bearer shares, the name of the actual owner is not recorded on the physical stock certificate, nor in the public register. For Wise Man Estate N.V., the share holder was listed as the Director of the company, Milthon Boldewijn, but the actual beneficiary or true share owner was Hornberger.

10.     Belgian authorities indicated that neither Hornberger nor his girldfriend, Krolis, declared any substantial official income on their tax returns from 2015 to 2018, nor did they report as required, having disposed of any substantial financial assets.

11.     To further the investigation into money laundering by Hornberger and his associates, Belgian authorities have asked U.S. authorities to obtain records regarding the owner and/or beneficiaries of the Sabadell United Bank account used to conduct the above transactions,

account transaction histories and other relevant account information. They have also asked U.S. authorities to obtain similar owner/beneficiary and other relevant corporate information and records relating to U.S. company, S.L. Rama International, and to obtain testimony from representatives of these companies regarding their knowledge of and/or involvement in these transactions, including but not limited to those individuals named in the above facts.

## LEGAL BACKGROUND

### The Treaty

1.      A treaty constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

2.      The United States and Belgium entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters. See Treaty pmbl. The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. Article 16. In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests. Article 16 ("The judicial authorities of the Requested

State shall have jurisdiction to issue subpoenas, search warrants or other orders necessary to execute [a] request").

3.    When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

        *                    *                    *

[A]n application for execution of a request from a foreign authority under this section may be filed in the district in which a person who may be required to appear resides or is located or in which the documents or things to be produced are located.

        *                    *                    *

The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

4.    Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse);

Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[1] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

5. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs, which serves as the "Central Authority" for the United States,[2] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[3] Upon such a duly authorized application, Section 3512 authorizes a federal judge[4] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. §

---

[1] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were previously executed); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[2] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B (2018).

[3] "Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[4] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1) and Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

8

3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)-(b)(1). In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. 18 U.S.C. § 3512(a)(1).

6.    Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents. The appointed person has authority to (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

REQUEST FOR ORDER

7.    As evidenced by a letter dated July 16, 2024 from the Office of International Affairs to the Office of the United States Attorney for the Sourthern District of Florida, the Office of International Affairs has reviewed and authorized the Request and has delegated execution to the U.S. Attorney's Office for the Southern District of Florida. Consequently, this application for an Order appointing the undersigned Assistant U.S. Attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Federal Public Service Justice, the designated Central Authority in

Belgium and seeks assistance in the investigation of laundering – a criminal offense in Belgium. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank and business records, and witness interviews, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the Southern District of Florida. Accordingly, this application was properly filed in this district.

8.      This application is being made ex parte, consistent with U.S. practice in its domestic criminal matters.

9.      When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and   commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without

notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

10. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Michele Vigilance, Assistant United States Attorney, United States Attorney's Office (or a substitute or successor subsequently designated by the United States Attorney's Office) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:

Michele S. Vigilance
Assistant United States Attorney
United States Attorney's Office
Court ID No.: A5502091
99 Northeast. 4th Street
Miami, Florida 33132
Telephone: (305) 961-9387
Facsimile: (305) 536-7213
Email: Michele.Vigilance@usdoj.gov