**EXHIBIT 2**

**<u>THE TREATY</u>**

Belgium MLAT



Department of State

*Washington, D.C. 20520*

January 28, 1988

IN RESPONSE TO YOUR REQUEST

FROM:   TREATY AFFAIRS
        OFFICE OF THE LEGAL ADVISER

Treaty between the United States and
Belgium on Mutual Legal Assistance in
Criminal Matters signed this date in
Washington.

RECEIVED
1/28/88
OIA

**TREATY BETWEEN THE UNITED STATES OF AMERICA
AND THE KINGDOM OF BELGIUM
ON MUTUAL LEGAL ASSISTANCE
IN CRIMINAL MATTERS**

The Government of the United States of America and the Government of

the Kingdom of Belgium, desiring to conclude a Treaty on mutual

legal assistance in criminal matters,

Have agreed as follows:

- 2 -

## ARTICLE 1

### Scope of Application

1.  The Contracting States shall provide, in accordance with the provisions of this Treaty, mutual legal assistance in all matters relating to the investigation, prosecution and suppression of offenses.

2.  Assistance shall include, but not be limited to:

    a)   locating or identifying persons;

    b)   serving documents;

    c)   providing information and items, including documents, records and articles of evidence;

    d)   taking testimony and producing documents;

    e)   executing requests for search and seizure;

    f)   transferring persons in custody for testimonial or other purposes;

    g)   **locating, tracing, immobilizing, seizing and forfeiting proceeds of crime; and**

    h)   assuring restitution to victims of crime.

3.  Unless otherwise provided by this Treaty, assistance shall be provided for any offense under the laws of the Requesting State.

4.  This Treaty is intended solely for mutual legal assistance between the Contracting States.  The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.



-3-

## ARTICLE 2

### Locating or Identifying Persons

The Requested State shall make thorough efforts to ascertain the location or identity of persons specified in the request.

## ARTICLE 3

### Serving Documents

1.  The Requested State shall cause service of any legal document transmitted for this purpose by the Requesting State.

2.  Any request for the service of a document requiring the appearance of a person before an authority in the Requesting State shall be transmitted a reasonable time before the scheduled appearance.

3.  The Requested State shall return as proof of service a dated receipt signed by the person served or a declaration signed by the officer making service, specifying the form and date of service.

## ARTICLE 4

### Appearance of Witnesses and Experts
### in the Requesting State

1.  If the Requesting State considers that the personal appearance of a witness or expert before its judicial authorities is particularly necessary, it may so state in

-4-

its request, and the Requested State shall invite the
witness or expert to appear.  The Requested State shall
promptly inform the Requesting State of the reply of the
witness or expert.

2.    The witness or expert shall be appropriately reimbursed by
the Requesting State for travel expenses and subsistence
incurred in complying with the request.  If the witness or
expert so requests, the Requesting State may provide an
advance with respect to those travel expenses and
subsistence; this advance may be provided through its
embassy in the Requested State.

3.    The witness or expert who has failed to answer a summons
to appear, service of which has been requested, shall not
be subjected to any punishment or measure of restraint in
the Requested State, even if the summons contains a notice
of penalty.

### ARTICLE 5

#### Providing Information and Items in the Possession
#### of Government Offices or Agencies

Upon request and for the purposes of this Treaty:

a)    the Requested State shall provide publicly available
information and items, including documents or records, in
the possession of a government office or agency;

b)    the Requested State may provide information and items,
including documents or records, in the possession of a
government office or agency, but not publicly available,



-5-

to the same extent and under the same conditions as it
would be available to its own law enforcement or judicial
authorities. The Requested State in its discretion may
deny the request entirely or in part.

### ARTICLE 6

#### Taking Testimony and Producing Documents
#### in the Requested State

1.  A person from whom evidence is sought shall, if necessary,
    be compelled by subpoena to appear and to testify or to
    produce items, including documents, records and articles
    of evidence, to the same extent as in investigations or
    proceedings in the Requested State. Testimonial
    privileges under the laws of the Requesting State shall
    not be taken into consideration in the execution of
    requests under this Article, but any such claim shall be
    noted in the record.

2.  On request, the Requested State shall state the date and
    place of the taking of testimony.

3.  At the execution of a request, the Requested State shall
    permit the presence of the accused, counsel for the
    accused, and any other interested person specified in the
    request.

4.  The executing authority shall provide any person permitted
    to be present the opportunity to pose questions for the
    person whose testimony is sought. The questions shall be
    posed in accordance with applicable procedures in the
    Requested State.

-6-

## ARTICLE 7

### Executing Requests for Search and Seizure

1.    To the extent permitted under its laws, the Requested
      State shall execute a request for the search, seizure, and
      delivery of all items, including documents, records and
      articles of evidence, to the Requesting State if the
      request includes the information justifying such action
      **under the laws of the Requested State.  The search and**
      seizure shall be carried out in accordance with the laws
      of that State.

2.    The Requested State may condition the surrender of the
      items upon satisfactory assurances from the Requesting
      State that the items will be returned to the Requested
      State as soon as practicable.  Without such a condition,
      no obligation shall exist to return the items to the
      **Requested State.  The Requested State may also defer the**
      **surrender of items needed as evidence in that State.**

3.    The rights of third parties in such items shall be duly
      respected.

## ARTICLE 8

### Procedures Concerning Admissibility of Evidence

1.    The Requesting State may ask the Requested State to follow
      particular procedures in executing a request under Article
      5, 6, or 7 to ensure admissibility of the items produced
      or seized, and the Requested State shall follow these

-7-

   procedures, provided they are not prohibited by its laws.

2.  The items seized in Belgium shall be held in custody by
   the office of the court clerk after being inventoried.
   Those items will be kept by that office at the disposal of
   the authorities of the United States of America.  Upon
   request, that office shall provide, with the items
   delivered, attestations in compliance with the form
   **appended to this Treaty and executed by each person** having
   had possession of the items from the time of seizure.
   These attestations shall be admissible in evidence in the
   United States of America as proof of the truth of the
   matters set forth therein; no other attestation shall be
   required.

3.  In the event of special circumstances, the Central
   Authorities shall consult concerning practical
   **arrangements relating to the particular procedures to be**
   **followed.**

ARTICLE 9

Transferring Persons in Custody in the Requested State
to the Requesting State

1.  A person in custody in the Requested State who is
   needed for purposes of assistance under this Treaty in
   the Requesting State shall be transported to the
   Requesting State if the person in custody consents and
   the Requested State has no reason to deny the transfer.



-8-

2. The Requested State may postpone execution of the request for as long as the presence of the person is necessary for an investigation or proceeding in the Requested State.

3. The Requesting State shall have the authority and obligation to keep the person in custody unless the Requested State has ordered release.

4. The Requesting State shall return a person not released under paragraph 3 to the custody of the Requested State as soon as circumstances permit unless otherwise agreed.  The Requesting State shall not decline to return a person transferred because such person is a national of that State.

ARTICLE 10

Transferring Persons in Custody in the Requesting State
to the Requested State

1. For purposes of assistance under this Treaty, the Requesting State may request the transfer to the Requested State of a person in its custody if the person in custody consents and the Requested State has no reason to deny the transfer.

2. The Requested State shall have the authority and obligation to keep that person in custody unless the Requesting State has ordered release.

3. The Requested State shall return a person not released under paragraph 2 to the custody of the Requesting

-9-

State as soon as circumstances permit unless otherwise
agreed.  The Requested State shall not decline to
return the person transferred because such person is a
national of that State.

ARTICLE 11

Application of Articles 9 and 10

1.  For purposes of Articles 9 and 10:

    a)    The time spent in custody in the State to which a
person has been transferred will be deducted from
the time remaining to be served in the other
State.

    b)    The person transferred may not be prosecuted,
detained or subjected to any other restriction of
personal liberty in the State to which he has
been transferred for acts or convictions prior to
his transfer.

    c)    The immunity provided in sub-paragraph b shall
cease if the person transferred:

        (i)  having had for a period of 15 consecutive
days an opportunity to leave the State to which
he has been transferred, has remained; or

        (ii)  having left, has returned.

2.      If the transferred person escapes, the State to
which he has been transferred shall make every
effort to arrest him.

3.        Extradition proceedings shall not be required in
          order to effect the return of persons transferred
          under Article 9 or 10.

## ARTICLE 12

### Proceeds of Crime and Restitution to Victims

1.   To the extent permitted by its domestic laws
     applicable at the time that the request is made, each
     Contracting State commits itself to grant assistance
     to:

     a)   locate, trace, immobilize, seize and forfeit
          proceeds of crime; and

     b)   assure restitution to victims.

2.   The Central Authority of a Contracting State which has
     reason to believe that proceeds of crime may be
     discovered in the other State shall notify the Central
     Authority of that State which shall determine whether
     any action is appropriate and report as soon as
     possible on the action taken.

## ARTICLE 13

### Limitations on Assistance

1.   The Central Authority of the Requested State may deny
     a request to the extent that:

     a)   execution of the request would prejudice the
          sovereignty, security or other essential public
          interests of the Requested State;

    b)  the request relates to an offense under military law which would not be an offense under ordinary criminal law; or

    c)  the request does not comply with the provisions of this Treaty.

2.    The Central Authority of the Requested State may also deny a request if it involves a political offense. This paragraph shall not apply to any offense which the Contracting States may consider not to be a political offense under any other international agreement to which they are parties.

3.    Before denying assistance pursuant to this Article, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

4.    The Central Authority of the Requested State may postpone execution of a request or grant it subject to conditions if execution would interfere with an ongoing investigation or legal proceeding in the Requested State.

5.    The Central Authority of the Requested State shall inform the Central Authority of the Requesting State as soon as possible of the reason for denying or postponing the execution of a request.

## ARTICLE 14

### Protecting Confidentiality

Upon the request of the Requesting State, the Requested
State shall use its best efforts to keep confidential a
request and its contents.  If the request cannot be
executed without breaching the required confidentiality,
the Central Authority of the Requested State shall so
inform the Central Authority of the Requesting State, which
shall then decide whether the request should nevertheless
be executed.

## ARTICLE 15

### Contents of Requests

1.  A request for assistance shall indicate:

    a)  the name of the authority conducting the
        investigation or proceeding to which the request
        relates;

    b)  the subject matter and nature of the
        investigation or proceeding;

    c)  a description of the information or item sought
        or the action to be performed; and

    d)  the purpose for which the information, item or
        action is sought.

2.  To the extent necessary and possible, a request shall
    include:

    a)  available information on the identity and
        whereabouts of a person to be located;

-13-

b) the identity and location of a person to be served, that person's relationship to the proceeding and the manner in which service is to be made;

c) the identity and location of persons from whom evidence is sought;

d) a description of the manner in which any testimony is to be taken and recorded;

e) a list of questions to be answered;

f) a precise description of the place to be searched and the items to be seized;

g) a description of any particular procedure to be followed in executing the request; and

h) information relating to the allowance to which the witness or expert appearing in the Requesting State may be entitled.

## ARTICLE 16

### Executing Requests and Return of Items

1. The Central Authority of the Requested State shall promptly comply with the request or, when appropriate, transmit it for execution to the authority having jurisdiction, which shall make best efforts to execute the request. The judicial authorities of the Requested State shall have jurisdiction to issue subpoenas, search warrants or other orders necessary to execute the request.

2.    Requests shall be executed according to the domestic
      laws and procedures of the Requested State except to
      the extent that this Treaty provides otherwise.
      Procedures specified in the request, even if
      unfamiliar to the Requested State, shall be followed
      except to the extent specifically prohibited by the
      laws of the Requested State.

3.    The Requested State may furnish copies of items,
      including documents, records, and articles of
      evidence, obtained in executing a request.   Upon
      application of the Requesting State, the Requested
      State shall make every effort to furnish original
      items.    .

4.    Except as provided in Article 7, the Requesting State
      shall return any items furnished in execution of
      requests for assistance as soon as possible unless the
      Requested State waives their return.

ARTICLE 17

Central Authorities

1.    All requests for assistance shall be made and executed
      through a Central Authority for each Contracting
      State.   The Central Authorities of the two States
      shall communicate directly with each other for the
      purpose of carrying out the provisions of this
      Treaty.

-15-

2.  For the purposes of this Treaty, the term "Central
    Authority" means:

    a)  for the Kingdom of Belgium, the Minister of
        Justice or his representative or delegate;

    b)  for the United States of America, the Attorney
        General or officials designated by him.

### ARTICLE 18

#### Costs and Translations

1.  The Requested State shall render assistance without
    cost to the Requesting State except for fees of
    private experts authorized by the request.

2.  The Requesting State shall bear all expenses related
    to the transfer under Articles 9 and 10 of a person in
    custody.

3.  **If during the execution of the request it becomes
    apparent that expenses of an extraordinary nature are
    required to fulfill the request, the Central
    Authorities shall consult to determine the terms and
    conditions under which the execution of the request
    may continue.**

4.  Requests under this Treaty shall be provided in
    English and either French or Dutch; however, letters
    of transmission from the Central Authority need not be

translated. Attachments to such requests shall he
translated as necessary by the Requesting State.
Translation of documents provided pursuant to requests is
incumbent on the Requesting State.

### ARTICLE 19

### Other Treaties and Domestic Laws

Assistance and procedures provided by this Treaty shall not
impede any assistance or procedure available under other
international conventions or arrangements or under the
domestic laws and practices of the Contracting States.

### ARTICLE 20

### Entry into Force and Termination

1.  This Treaty shall be subject to ratification; the
    instruments of ratification shall be exchanged at
    Brussels, as soon as possible.

2.  This Treaty shall enter into force on the first day of
    the second month after the exchange of the instruments
    of ratification.

3.  This Treaty shall apply to offenses committed before
    as well as after it enters into force.

4.  Either Contracting State may terminate this Treaty at
    any time by giving written notice to the other
    Contracting State. The termination shall be effective
    six months after the date of such notice.

-17-

IN WITNESS WHEREOF, the undersigned, being duly authorized for this purpose, have signed this Treaty.

DONE at Washington, in duplicate, this twenty-eighth day of January, 1988, in the English, French and Dutch languages, all three texts being equally authentic.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:

*Edwin Meese III*

FOR THE GOVERNMENT OF THE
KINGDOM OF BELGIUM:



## FORM

I, the undersigned,     (Family Name), (Forenames),
                        (Address)                    ,
                        (Title or Function)          ,

attest on penalty of criminal punishment for false statements or

attestation that I:

    -- seized the articles listed below from   (person)
        on   (date)   at   (place)  (*)

    -- received custody of the articles listed below from
        (person)    on   (date)   at    (place)   (*)

Description of articles:

I declare that I relinquished custody of those articles

on    (date)    at    (place)    to:   (Name(s)),  (Forenames)
                                       (Address)
                                       (Title or Function)     .

I declare that, while they were in my custody, these

articles were:

    -- in no way altered. (*)

    -- altered in the following manner: (*)

DONE this _____ day of _____, ____, at   (place).

                                    (signature)

(*)  cross out the inapplicable statements